IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BIO-RAD LABORATORIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>10X GENOMICS, INC.,<br><br>Defendant. | Civil Action No. 18-1679-RGA |

MEMORANDUM ORDER

Currently pending before the Court is Defendant's Motion to Dismiss and/or Strike. (D.I. 9). The parties have fully briefed the issues. (D.I. 10, 15, 16). After reviewing the briefing, Defendant's motion is DENIED.

**I.  BACKGROUND**

Plaintiff Bio-Rad Laboratories filed this suit against Defendant 10X Genomics on October 25, 2018 asserting U.S. Patent Nos. 9,562,837 ("the '837 patent") and 9,896,722 ("the '722 patent") (collectively, "the Asserted Patents"). (D.I. 1). The Asserted Patents claim technology related to handling samples in a way that reduces sample contamination and sample loss. The Complaint references only Claim 1 of each patent. Claim 1 of the '837 patent reads as follows:

> 1. An assembly, the assembly comprising:
>
> a microchannel in a horizontal plane;
>
> at least one droplet formation module comprising a sample inlet, an immiscible fluid inlet, and a junction, wherein the junction is located between the sample inlet and the microchannel and the droplet formation module is configured to produce droplets comprising the sample surrounded by the immiscible fluid; and
>
> at least one downstream separation chamber comprising a droplet receiving chamber inlet and at least one droplet receiving outlet, wherein the separation chamber is upright to the microchannel and out of the horizontal plane;

wherein the droplet formation module and the separation chamber are in fluid communication with each other via the microchannel; and wherein the separation chamber has a wider cross-section than the microchannel cross-section to accumulate a plurality of droplets comprising the sample and is of a volume sufficient to separate the plurality of droplets comprising the sample from the immiscible fluid within the separation chamber.

('887 patent, cl. 1). Claim 1 of the '722 patent reads as follows:

1. A method of reducing contamination associated with sample handling, comprising:

providing an aqueous fluid comprising a sample through a sample inlet;

providing an immiscible fluid flowing through a main channel that is in fluidic communication with the sample inlet, wherein the main channel is in a horizontal plane;

partitioning the aqueous fluid with the immiscible fluid to form a plurality of droplets in the main channel, wherein at least one droplet comprises a sample;

flowing the droplets toward a downstream separation chamber that is in fluidic communication with the main channel,

wherein the separation chamber has a wider cross-section than the main channel cross-section and the separation chamber is disposed perpendicular to the main channel; and

separating the plurality of droplets from the immiscible fluid in the separation chamber based on the different densities of the droplets and the immiscible fluid.

('722 patent cl. 1).

Defendant has filed a motion to dismiss this suit under Federal Rule of Civil Procedure 12(b)(6) for lack of patent eligibility under 35 U.S.C. § 101, or in the alternative, to dismiss and/or strike under Rules 12(b)(6) and/or 12(f) for failure to state a claim of induced, contributory, or willful infringement. (D.I. 10 at 8). Plaintiff opposes the motion.

## II. LEGAL STANDARD

### A. Motion to Dismiss

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the complaint's factual allegations as true. *See Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555–56 (2007). Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 555. The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Id.* ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."). Moreover, there must be sufficient factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard is satisfied when the complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)).

### B. Patentable Subject Matter Under 35 U.S.C. § 101

Section 101 of the Patent Act defines patent-eligible subject matter. It provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has recognized an implicit exception for three categories of subject matter not eligible for patentability—laws of nature, natural phenomena, and abstract ideas. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). The purpose of these carve outs is to protect the "basic tools of scientific and technological work." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012). "[A] process is not unpatentable simply because it contains a law of nature or a mathematical algorithm," as "an application of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection." *Id.* (internal quotation marks and emphasis omitted). In order

3

"to transform an unpatentable law of nature into a patent-eligible application of such a law, one must do more than simply state the law of nature while adding the words 'apply it.'" *Id.* at 72 (emphasis omitted).

The Supreme Court recently reaffirmed the framework laid out in *Mayo* "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 573 U.S. at 218. First, the court must determine whether the claims are drawn to a patent-ineligible concept. *Id.* at 217. If the answer is yes, the court must look to "the elements of the claim both individually and as an 'ordered combination'" to see if there is an "'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* (alteration in original). A claim that recites a law of nature must include "additional features that provide practical assurance that the [claim] is more than a drafting effort designed to monopolize the law of nature." *Mayo*, 566 U.S. at 77. Further, "the prohibition against patenting [ineligible subject matter] cannot be circumvented by attempting to limit the use of [the ineligible matter] to a particular technological environment." *Alice*, 573 U.S. at 223 (quoting *Bilski v. Kappos*, 561 U.S. 593, 610-11 (2010)).

"Whether a claim is drawn to patent-eligible subject matter under § 101 is an issue of law," and "is a matter of both claim construction and statutory construction." *In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008), *aff'd sub nom. Bilski v. Kappos*, 561 U.S. 593 (2010). "Claim construction is a question of law . . . ." *In re Nuijten*, 500 F.3d 1346, 1352 (Fed. Cir. 2007).

The Federal Circuit has held that the district court is not required to individually address claims not asserted or identified by the non-moving party, so long as the court identifies a representative claim and "all the claims are substantially similar and linked to the same abstract

idea." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (internal quotation marks omitted).

## III. DISCUSSION

### A. The Asserted Claims are not Directed to a Patent-Ineligible Concept

Defendant moves to dismiss for failure to state a claim because it alleges that the Asserted Patents are patent ineligible under 35 U.S.C. § 101. (D.I. 10 at 11). Defendant asserts that the Asserted Patents are directed to "the natural phenomenon of allowing two different liquids of different densities to separate from each other."[1] (*Id.*). Plaintiff responds that patent claims are not directed to the natural phenomenon that liquids of different densities will separate from one another and contends that the patents are directed to the patent-eligible result of a method and apparatus to reduce sample contamination when handling samples. (D.I. 15 at 12-15). I agree with Plaintiff.

The Asserted Patents claim methods and an assembly designed to reduce contamination when handling samples. ('837 patent col. 2:35-39, 3:7-58, 52:27-37, 55:22-26). Defendant's argument that the claims are directed to "the natural phenomenon of allowing two different liquids of different densities to separate from each other," (D.I. 10 at 11), improperly oversimplifies the claims by reducing them to a single claim element. Like the claims at issue in *Rapid Lit. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042 (Fed. Cir. 2016), "it is enough here to recognize that the claims are simply not directed to" the ability of liquids with different densities to separate from each other. *Id.* at 1048. Rather, the claims are directed to a new and useful technique and system for minimizing contamination when handling samples. "This type of constructive process, carried

---

[1] Defendant asserts that Claim 1 of each patent is representative. (D.I. 10 at 11). Plaintiff does not dispute this assertion. (D.I. 15). I agree with Defendant that Claim 1 of each patent is representative for the purposes of the analysis.

out by an artisan to achieve 'a new and useful end,' is precisely the type of claim that is eligible for patenting." *CellzDirect*, 827 F.3d at 1048. While the claims certainly utilize the separation of liquids with different densities to effect the desired outcome, this is insufficient to determine that the claims are wholly directed to a patent ineligible concept. "[A]ll inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Mayo*, 566 U.S. at 71. Thus, the Federal Circuit has warned against "describing the claims at such a high level of abstraction [] untethered from the language of the claims," *Enfish*, 822 F.3d at 1337, because "all inventions can be reduced to underlying principles of nature." *Diamond v. Diehr*, 450 U.S. 175, 189 n.12 (1981). Moreover, "an application of a law of nature . . . to a known structure or process may well be deserving of patent protection." *Mayo*, 566 U.S. at 71 (cleaned up).

Additionally, the claims here are distinguishable from cases where the Federal Circuit has determined that the claims are directed to a natural phenomenon. In *Mayo*, "the claims were directed to a diagnostic method based on the 'relationships between concentrations of certain metabolites in the blood and the likelihood that a dosage of a thiopurine drug will prove ineffective or cause harm.'" *Vanda Pharms. Inc. v. West-Ward Pharms. Int'l Ltd.*, 887 F.3d 1117, 1134 (Fed. Cir. 2018) (quoting *Mayo*, 566 U.S. at 77). The subsequent administering limitation was nothing more than an instruction to apply that relationship. *Mayo*, 566 U.S. at 78. Similarly, in *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1373-74 (Fed. Cir. 2015), the claims recited methods for detecting paternally inherited cffDNA in the blood or serum of a pregnant woman. The Federal Circuit held that identifying the presence of cffDNA was simply claiming the natural phenomenon itself. *Id.* at 1376.

In contrast, here, "[t]he end result of the [] claims is not simply an observation or detection of the ability" of liquids to separate by density. *CellzDirect*, 827 F.3d at 1048. The Federal Circuit

6

has continued to endorse this distinction in recent cases. *See, e.g.*, *Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*, 915 F.3d 743, 751 (Fed. Cir. 2019) (distinguishing between *CellzDirect* where "[t]he claimed advance harnessed a natural law to produce a technological improvement that was patent eligible" and *Cleveland Clinic* where the "claims merely recite[d] observing naturally occurring biological correlations with no meaningful non-routine steps in between"); *see also Endo Pharms., Inc. v. Teva Pharms. USA Inc.*, — F.3d —, 2019 WL 1387988, at *7 (Fed. Cir. Mar. 28, 2019) (discussing cases). The recited steps and assembly achieve an improved way of handling samples that reduces the sample contamination that would otherwise occur.

Therefore, I determine that the Asserted Patents are not directed to patent-ineligible subject matter under 35 U.S.C. § 101.

**B.     Prayer for Relief**

Defendant moves for dismissal of "the portions of the Complaint seeking relief based on induced, contributory, and willful infringement because the Complaint fails to support those claims." (D.I. 10 at 19). Specifically, Defendant attacks Plaintiff's request for (1) a judgment that Defendant has infringed the Asserted Patents, (2) an injunction prohibiting both direct and indirect infringement, and (3) enhanced damages. (*Id.* (citing D.I. 1 ¶¶ a-b, d)).

I determine that the identified requests are supported by the claims for relief as they have been plead. Ultimately, "[w]hatever relief Plaintiff may [] receive will necessarily stem from the claims, not from Plaintiff's Prayer for Relief." *Kirusa, Inc. v. Instagram, LLC*, C.A. No. 18-1460, D.I. 14 at 1 (D. Del. Dec. 12, 2018). Plaintiff's complaint merely preserves a broad range of potential remedies by requesting relief that could be granted, depending on the facts as ultimately proven.

Defendant cites no authority that limits my flexibility or precludes me from granting Plaintiff's requested relief of an injunction or enhanced damages in the appropriate circumstances.[2] Moreover, the issue of what relief, if any, will be available to Plaintiff is properly determined closer to trial, if not at or after trial. Thus, I deny Defendant's motion to dismiss or strike portions of the prayer for relief.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (D.I. 9) is DENIED.

Entered this 8 day of April, 2019.

Richard G. Andrews
United States District Judge

---

[2] While Defendant attacks the request for enhanced damages on the grounds that willfulness has not been sufficiently plead, Plaintiff's request does not appear to be dependent on willfulness grounds.

8